| | | |
|---|---|---|
| DOMINIC SILVESTER<br>310 E. 53rd Street, Apt. 22C<br>New York, New York 10022 | \* | IN THE |
| | \* | CIRCUIT COURT |
| and | \* | FOR |
| JULIE SILVESTER<br>310 E. 53rd Street, Apt. 22C<br>New York, New York 10022 | \* | BALTIMORE CITY |
| | \* | Case No: 04-C-14-003572 |
| Plaintiffs | \* | |
| | \* | |
| v. | | |
| | \* | |
| THE JOHNS HOPKINS HOSPITAL<br>600 North Wolfe Street<br>Baltimore, Maryland 21218 | \* | |
| | \* | |
| Serve On: Resident Agent<br>Joanne Pollack, Esq.<br>Administration 414<br>600 North Wolfe Street<br>Baltimore, Maryland 21218 | \* | |
| | \* | |
| | \* | |
| Defendant | \* | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## COMPLAINT AND ELECTION FOR JURY TRIAL

Plaintiffs, Dominic Silvester and Julie Silvester, by and through their attorneys, Paul D. Bekman, Jeffrey S. Quinn, and Salsbury, Clements, Bekman, Marder & Adkins, LLC, sue Defendant, The Johns Hopkins Hospital, and, in support thereof, state as follows:

### Jurisdiction and Venue

1. Plaintiffs, Dominic Silvester and Julie Silvester, are residents of New York State.

2. Defendant, The Johns Hopkins Hospital (hereinafter "Hopkins"), is a business entity incorporated under the laws of the State of Maryland, with its principal place of business in Baltimore City, Maryland.

1

3. A Statement of Claim was filed with the Health Care Alternative Dispute Resolution Office as required under Maryland law, and arbitration of the claim was waived by the Plaintiffs pursuant to § 3-2A-06B(b) of the Courts and Judicial Proceedings Article. The Order of Transfer, Election to Waive Arbitration, and the Certificate of Qualified Expert are attached as **Exhibit 1**, **Exhibit 2**, and **Exhibit 3** respectively.

4. At all relevant times, John K. Niparko, M.D., was an agent, servant, and employee of Defendant, Hopkins, and is a physician and otolaryngologist who was practicing in Baltimore City, Maryland and is now practicing in Los Angeles, California.

5. At all times, Defendant, Hopkins, was and is a medical facility offering medical, surgical, and other related services to the general public through their agents, apparent agents, servants, and other employees, including nurses, staff physicians, residents, interns, and other such providers. This Defendant owed a duty to Dominic Silvester to render and provide health care within the ordinary standards of care and to exercise reasonable care in the selection of its personnel.

6. At all times, Hopkins' agent, servant, and employee, John K. Niparko, held himself out to the general public as an experienced, confident, and able physician, possessing and providing that degree of skill and knowledge ordinarily possessed by those in his profession. Dr. Niparko had a duty to Dominic Silvester to render that degree of care and treatment which is ordinarily rendered by those who practice otolaryngology.

7. At all times, John K. Niparko, M.D., and the other physicians and nurses, were employees, agents, apparent agents, or servants of Hopkins and were acting in the scope of their employment or agency.

8. The amount of this claim exceeds Thirty Thousand Dollars ($30,000.00).

9. Venue is proper in the Circuit Court for Baltimore City, Maryland as all of the events giving rise to this claim occurred in Baltimore City, Maryland.

## Facts

10. Plaintiffs adopt and incorporate paragraphs 1 through 9 as if fully set forth herein.

11. On, or around, October 27, 2010, Mr. Silvester began experiencing tinnitus, which is a consistent ringing in his ears.

12. On, or around, November 3, 2010, Mr. Silvester was seen by Dr. John Niparko, who was the Director of the Department of Otolaryngology-Head & Neck Surgery at Hopkins. Dr. Niparko diagnosed Mr. Silvester with post-viral tinnitus. At this time, Mr. Silvester's right ear was his better hearing ear, and initial imagining studies showed that his middle ear and mastoid cavity were normal with no sign of any disease or infection.

13. In December 2010, Dr. Niparko began treating Mr. Silvester's tinnitus by injecting steroids directly into Mr. Silvester's middle ear. To do this, Dr. Niparko performed a myringotomy tube placement in both ears, which involves the placement of a tympanostomy tube through the patient's eardrum.

14. Beginning in December 2010, Dr. Niparko began regularly injecting dexamethasone, a steroid, directly into Mr. Silvester's middle ear. Additionally, Dr. Niparko gave Mr. Silvester topical steroids to take home with instructions to inject the steroid solution himself. Based upon information and belief, Mr. Silvester was receiving a steroid injection approximately every-other-day, and, on some occasions, multiple times in one-day.

15. On, or around, February 25, 2011, after repeated steroid injections, Mr. Silvester developed an infection in his right ear. This caused him to suffer significant pain, which was followed by a puss draining from his right ear and significant hearing loss in his right ear.

3

16. Dr. Niparko kept Mr. Silvester on the steroid injection treatment.

17. On, or around, March 17, 2011, Dr. Niparko performed a right mastoidectomy on Mr. Silvester. This is a significant medical surgery which is designed to remove the mastoid air cells in the ear. Based on information and belief, Dr. Niparko would perform six additional right revision mastoidectomy surgeries to Mr. Silvester's right ear on, or around, May 6, 2011, July 20, 2011, August 25, 2011, October 5, 2011, January 4, 2012, and April 12, 2012.

18. While continuing to inject Mr. Silvester with steroids, Dr. Niparko referred Mr. Silvester to several other physicians at Hopkins for treatment.

19. On, or around, June 13, 2011, Mr. Silvester was seen by Dr. Sandra Yi-Sheng Lin, a physician at Hopkins, who began treating Mr. Silvester for dust-bite allergies. Mr. Silvester was placed on a twelve-month sublingual immunotherapy. This failed to improve Mr. Silvester's tinnitus and hearing loss.

20. On, or around, September 23, 2011, Mr. Silvester was seen by Dr. Paul Gisbert Auwaerter, a physician at Hopkins, for an infectious disease consultation. At the request of Dr. Niparko, Dr. Auwaerter agreed to test Mr. Silvester for tuberculosis (TB) even though Dr. Auwaerter did not see any sign that TB was causing the tinnitus or hearing loss.

21. On, or around, January 29, 2012, Dr. Niparko began talking with Dr. Philip Seo, a physician at Hopkins, about the possibility of Mr. Silvester suffering from Wegener's disease. On, or around, January 31, 2012, Dr. Seo diagnosed Mr. Silvester with Wegener's disease even though Mr. Silvester was ANCA-negative and without evidence of systemic inflammation. Instead, Dr. Niparko's and Dr. Seo's decision to pursue treatment for Wegener's disease was based on the failure of the steroid injections and mastoidectomy surgeries. Mr. Silvester was

then started on bactrim and methotrexate. Methotrexate is a very strong drug that can cause serious, life-threatening, side effects.

22. On, or around, May 4, 2012, Dr. Seo reports that pathology from Mr. Silvester's most recent right revision mastoidectomy surgery on, or around, April 12, 2012, showed signs of vasculitis, which he believed validated the diagnosis of Wegener's disease. He subsequently began Mr. Silvester on a more aggressive Wegener's disease treatment plan, starting Mr. Silvester on a high dose pulse Solu-Medrol therapy and cyclophosphamide. Like methotrexate, cyclophosphamide is a very strong drug that can cause serious, life-threatening, side effects.

23. On, or around, August 8, 2012, Mr. Silvester sought a second opinion regarding the treatment he was receiving from Hopkins. Mr. Silvester saw Dr. Gary Hoffman, a rheumatologist at the Cleveland Clinic.

24. Dr. Hoffman had pathologists at the Cleveland Clinic look over the pathology slide samples from Hopkins, and they found no evidence of vasculitis in any of Mr. Silvester's samples.

25. Upon review of all of Mr. Silvester's medical records, it was immediately clear to Dr. Hoffman that Mr. Silvester was not suffering from Wegener's disease, and he immediately took Mr. Silvester off of the dangerous drug cyclophosphamide. The cyclophosphamide had already depleted Mr. Silvester's white blood cell count to dangerously low levels, leaving him at risk of a life threatening infection.

26. Mr. Silvester was also advised at this time to stop the steroid injections.

27. Despite the stopping of the steroid injections, Mr. Silvester was left with a large perforation, or hole, in his right ear drum.

28. On, or around, December 7, 2012, Mr. Silvester saw Dr. Michael McKenna, at the Massachusetts Eye and Ear Infirmary for postauricular revision tympanomastoidectomy to repair the perforation of his ear drum.

29. Based upon information and belief, the infection in Mr. Silvester's ear, which caused his permanent hearing loss and tinnitus, was not caused by dust-bite allegories, TB, or Wegener's disease as treated by Dr. Niparko and the other physicians at Hopkins. Instead, the infection was caused by Dr. Niparko's repeated and consistent injections of dexamethasone, a steroid, directly into Mr. Silvester's middle ear.

30. Based upon information and belief, between December 2010 and July 2012, Dr. Niparko continued to regularly inject steroids into the middle ear and mastoid cavity of Mr. Silvester's right ear. Based upon information and belief, Mr. Silvester received over two-hundred (200) steroid injections during this time.

31. Based upon information and belief, Mr. Silvester was caused to undergo seven (7) mastoidectomy surgeries to his right ear, multiple myringotomy with tube placement procedures, at least sixteen (16) CT scans, at least five (5) MRIs, was wrongly diagnosed with Wegener's disease, inappropriately prescribed the dangerous medications of methotrexate and cyclophosphamide, had a large hole through his eardrum, had to undergo revision surgery to close the hole in his eardrum, has permanent hearing loss in his right ear, and has long term tinnitus in his right ear.

## Count I – Negligence

32. Plaintiff, Dominic Silvester, adopts and incorporates paragraphs 1 through 31 as if fully set forth herein.

6

33. Hopkins, through its agents, servants, employees, or apparent agents, was negligent and careless in the following manners:

   a. repeatedly and consistently injecting steroids into Mr. Silvester's middle ear;

   b. creating a large perforation through Mr. Silvester's right ear drum;

   c. diagnosing Mr. Silvester with Wegener's disease;

   d. prescribing Mr. Silvester methotrexate and cyclophosphamide;

   e. diagnosing Mr. Silvester with vasculitis;

   f. causing Mr. Silvester to undergo so many medical procedures, including mastoidectomy surgeries, CT scans, and MRIs; and

   g. was otherwise careless and negligent.

34. As a direct and proximate result of the negligence of the Defendant, Plaintiff suffered serious physical injuries, for which he has incurred and will continue to incur substantial medical bills; has endured and will continue to endure emotional, mental, and psychological pain and suffering; has suffered other financial losses, including lost time from work; and was otherwise injured and damaged.

WHEREFORE, Plaintiff, Dominic Silvester, claims damages against Defendant, The John Hopkins Hospital, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined by the jury, with all costs to be paid by Defendant.

### Count II – Loss of Consortium

35. Plaintiffs, Dominic Silvester and Julie Silvester, as husband and wife, adopt and incorporate paragraphs 1 through 34 as if fully set forth herein.

36. As a direct and proximate result of the negligence of the Defendant, Hopkins, directly and by and through its agents, servants, employees, and apparent agents, Plaintiffs, Dominic and Julie Silvester, as husband and wife, have been caused to suffer severe mental anguish and emotional pain, and have lost and been deprived of the advice, aid, assistance, attention, care, comfort, companionship, counsel, services, society, and support of each other.

WHEREFORE, Plaintiffs, Dominic Silvester and Julie Silvester, as husband and wife, claim damages against Defendant, The John Hopkins Hospital, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), to be determined by the jury, with all costs to be paid by Defendant.

PAUL D. BEKMAN
JEFFREY S. QUINN
SALSBURY, CLEMENTS, BEKMAN,
MARDER & ADKINS, L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

*Attorneys for Plaintiffs*

|  |  |
|---|---|
| DOMINIC SILVESTER<br>310 E. 53rd Street, Apt. 22C<br>New York, New York 10022<br><br>and<br><br>JULIE SILVESTER<br>310 E. 53rd Street, Apt. 22C<br>New York, New York 10022<br><br>Plaintiffs<br><br>v.<br><br>THE JOHNS HOPKINS HOSPITAL<br>600 North Wolfe Street<br>Baltimore, Maryland 21218<br><br>Serve On: Resident Agent<br>Joanne Pollack, Esq.<br>Administration 414<br>600 North Wolfe Street<br>Baltimore, Maryland 21218<br><br>Defendant | * IN THE<br>* CIRCUIT COURT<br>* FOR<br>* BALTIMORE CITY<br>*<br>* Case No: _____ |

\* \* \* \* \* \* \* \* \* \*

## ELECTION FOR JURY TRIAL

Plaintiffs, Dominic Silvester and Julie Silvester, by and through their attorneys, Paul D. Bekman, Jeffrey S. Quinn, and Salsbury, Clements, Bekman, Marder & Adkins, LLC, respectfully request a trial by jury in the above captioned matter.

_____
PAUL D. BEKMAN
JEFFREY S. QUINN
SALSBURY, CLEMENTS, BEKMAN,
MARDER & ADKINS, L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633
*Attorneys for Plaintiffs*

9